IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HOIST & CRANE SERVICE GROUP, INC., | ) ) ) |
| Plaintiff, | ) ) ) C.A. No. _____ |
| v. | ) ) |
| TOYOTA MATERIAL HANDLING OF TENNESSEE, INC., | ) ) ) ) |
| Defendant. | ) |

**COMPLAINT**

Plaintiff Hoist & Crane Service Group, Inc. ("Plaintiff"), by its undersigned counsel, files this Complaint against Defendant Toyota Material Handling of Tennessee, Inc. ("Defendant"):

1. This is an action brought by Plaintiff against Defendant for its repeated breaches of both an Asset Purchase Agreement and Transition Services Agreement.

2. Defendant's breaches include, but are not limited to, misrepresenting Accounts Receivable, failing to remit payments to Plaintiff, failing to timely transfer key email accounts after Closing, failing to provide necessary Transition Services, and more.

3. As a result of Defendant's breaches, Plaintiff has been significantly damaged in an amount exceeding $1 million.

**PARTIES, JURISDICTION, AND VENUE**

4. Plaintiff is a Louisiana corporation with its principal place of business in Jefferson, Louisiana.

5. Defendant is a Delaware corporation with its principal place of business in Nashville, Tennessee.

106467611.4

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there exists complete diversity of citizenship between Plaintiff and Defendant and because the matter in controversy well exceeds $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over this action because, upon information and belief, Defendant transacts business in the State of Delaware and because the Parties contractually agreed to submit to the jurisdiction of this Court for purposes of this dispute, as discussed in greater detail below.

8. Venue in this Court is proper because the Parties contractually agreed to submit to the jurisdiction of this Court for purposes of this dispute, as discussed in greater detail below.

## BACKGROUND

### *The APA and TSA*

9. On or about March 28, 2024, Plaintiff and Defendant entered into an Asset Purchase Agreement ("APA"), under which Plaintiff agreed to purchase from Defendant substantially all the assets of a business engaged in providing service and repairs of industrial cranes (the "Business").

10. The APA defines "Losses", including those incurred by Plaintiff here, to include "costs or expenses of whatever kind, including reasonable attorneys' fees and the cost of enforcing any right to indemnification hereunder."

11. Under Section 8.07 of the APA, the Parties contractually agreed to submit to the exclusive jurisdiction and venue of any federal or state court sitting in the State of Delaware for purposes of this dispute.

106467611.4

12. On or about March 28, 2024, Plaintiff and Defendant also entered into a Transition Services Agreement ("TSA"), under which Defendant agreed to provide certain Transition Services[1] to ensure an orderly transition of the operations of the Business following Closing.

13. The Parties agreed that the TSA would be governed and construed in accordance with the laws of the State of Delaware, without regard to its principles of conflicts of laws.

14. Plaintiff has served any and all notices required to bring this action under the APA, TSA, and any other applicable agreements.

### *Defendant's Breaches of the APA*

15. Under Section 4.05 of the APA, Defendant was required to provide true, correct, and complete copies of the Business's Financial Statements that presented fairly, in all material respects, results of operations with respect to the Business.

16. Similarly, under Section 4.06 of the APA, Defendant was required to present as Accounts Receivable ("AR") only those amounts that (a) arose out of arm's length transactions actually made in the ordinary course of Business, (b) were the valid and legally binding obligations of the parties owing such amounts, (c) were not, to Defendant's knowledge, subject to counterclaim or setoff, and (d) were neither in dispute nor, to Defendant's knowledge, subject to any valid grounds for dispute.

17. However, the Financial Statements and Interim Financial Statements presented by Defendant overstated the value of the AR by at least $198,986.79 because the AR included customers that did not exist, customers that could not be contacted after multiple attempts, and

---

[1] Any capitalized terms that are not defined herein shall have the same definition as in the APA and/or TSA, depending on the context.

accounts that Defendant knew or should have known were uncollectable and therefore should have been excluded.

18. Defendant's misrepresentations of the AR and breaches of Sections 4.05 and 4.06 are material because Plaintiff determined the Purchase Price of $15,250,000 based upon a multiple of approximately 7.5 X EBITDA that was based, in part, upon AR, meaning that Defendant's misrepresentations resulted in a substantial inflation of the Purchase Price.

19. Additionally, under Section 6.05 of the APA, Defendant was required to remit to Plaintiff within five (5) business days any "wrong pockets" payments on AR made by customers to Defendant instead of Plaintiff.

20. In breach of the APA, Defendant routinely failed to make these payments at all until after Plaintiff proactively asked Defendant about outstanding invoices, rather than Defendant updating Plaintiff as it was required to do.

21. Many times, Plaintiff only learned that Defendant had received these payments after being told by the customers themselves when Plaintiff sought payment.

22. Defendant's breaches of Section 6.05 caused Plaintiff to expend significant time and resources tracking down AR payments that had already been paid to Defendant and led to Plaintiff seeking payment from clients whose accounts were current (albeit not paid to Plaintiff), which in turn negatively affected customers' confidence in Plaintiff and contributed to a significant loss of income for the Business.

23. Under Section 6.05 of the APA, Defendant was also required to coordinate with Plaintiff to send joint notices to customers of the Business to the effect that all payments in connection with the Business would be made to Plaintiff.

24. However, Defendant failed to respond to Plaintiff's attempts to communicate, with numerous calls and emails going unanswered, and also delayed in assisting several legacy clients of the Business to change to Plaintiff's banking information, despite multiple attempts by Plaintiff.

25. Under Section 2.04 of the APA, Defendant was required to "pay, perform and discharge as, and when, due, all of the Excluded Liabilities."

26. Defendant failed to perform its obligations under Section 2.04, placing Plaintiff in a position of potential liability and resulting in multiple key vendors of the Business threatening to sue or stop working with Plaintiff.

27. These threats have negatively impacted Plaintiff and the Business's relationships with key vendors, have caused Plaintiff to expend resources addressing vendors, and have further tarnished the Business's reputation, contributing to a significant loss of income for the Business.

### *Defendant's Breaches of the TSA*

28. Under Schedule A of the TSA, Defendant was required to provide Transition Services, including "[a]ssistance with accounts payable, accounts receivable and other day-to-day accounting services related to the pre-closing operation of the Business" and "[a]ssistance with coordinating with customers on appropriate payment to [Plaintiff] of Accounts Receivable."

29. As discussed above, Defendant repeatedly failed to timely remit to Plaintiff payments for AR that Defendant received after Closing.

30. During the transition period, Plaintiff routinely attempted to communicate with Defendant about receiving payments and coordinating with customers but often received little or incomplete information in response.

106467611.4

31. As a result of Defendant's failures to assist with AR and coordinating with customers, Plaintiff sought payment from numerous customers only to learn that they had already paid Defendant, often months or even years before Plaintiff was made aware of the payments.

32. Under Schedule A, Defendant was also required to provide Plaintiff with "[a]ccess to emails of Transferred Employees relating to pre-Closing operations of the Business."

33. However, Defendant did not provide Plaintiff with adequate access to those emails until August 19, 2025, *nearly five (5) months after Closing*, even after Plaintiff reminded Defendant on numerous occasions that the emails needed to be transferred.

34. Under Section 1(a) of the TSA, Defendant was required to "provide reasonable assistance to [Plaintiff] in a manner reasonably intended to minimize disruptions to the operation of the Business" and "attempt to resolve in good faith any issues related to the Transition Services."

35. The Business is, and at all times was, a services business that requires constant communication with clients to ensure their needs are continuously met.

36. Due to Defendant's failure to timely provide Plaintiff with access to the emails, it was impossible for Plaintiff to meet the needs of clients because it was not aware of pre-existing email communications regarding job status and similar issues, and therefore the operation of the Business was disrupted.

37. Additionally, under Schedule A, certain employees of Defendant—Ken Hoffman, Shawn Jones, and Isaac Lewis—were required "to provide transition advisory services *at [Plaintiff's] request* from time to time during the [six-month] Term, not to exceed an aggregate amount of time in excess of five (5) hours per week."

38. In other words, these individuals were contractually obligated to be available to assist Plaintiff for up to 130 hours each over the entire six-month Term.

39. Despite this requirement, these individuals did not spend more than ten hours in *total* during the Term helping Plaintiff with the transition.

40. As a result of Defendant's numerous breaches of the TSA, Plaintiff has suffered significant direct damages.

41. Further, Defendant's breaches made it impossible for the Business to enjoy a smooth and efficient transition of ownership, which Plaintiff bargained for and Defendant contractually promised it would ensure, causing a loss of customer confidence, significant loss of income, and departures of key personnel.

### COUNT I — BREACH OF CONTRACT
### (Asset Purchase Agreement)

42. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though the same were set forth at length herein.

43. As alleged above, the APA constituted a valid and binding contract supported by consideration between Plaintiff and Defendant.

44. No condition precedent to Plaintiff's performance of its contractual duties remains unfulfilled.

45. Defendant has failed to perform and materially breached its contractual obligations in several respects.

46. Specifically, Defendant provided inaccurate information related to AR in breach of Sections 4.05 and 4.06, which caused the Purchase Price to be wrongfully and drastically inflated.

47. Further, Defendant failed to timely remit payments in breach of Section 6.05 and failed to discharge Excluded Liabilities in breach of Section 2.04.

48. As a result of Defendant's breaches of the APA, Plaintiff has been damaged in an amount in excess of $1 million.

49. As discussed above, the APA expressly permits the recovery of reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order finding in favor of Plaintiff on Count I and provide the following relief:

(a) Awarding Plaintiff money damages in the amount in excess of $1 million;

(b) Awarding Plaintiff pre-judgment and post-judgment interest;

(c) Awarding Plaintiff's attorneys' fees and costs, as provided under the APA or otherwise;

(d) Such other and further relief that the Court deems just and proper.

## COUNT II — BREACH OF CONTRACT
**(Transition Services Agreement)**

50. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though the same were set forth at length herein.

51. As alleged above, the TSA constituted a valid and binding contract supported by consideration between Plaintiff and Defendant.

52. No condition precedent to Plaintiff's performance of its contractual duties remains unfulfilled.

53. Defendant has failed to perform and materially breached its contractual obligations in several respects.

54. Specifically, Defendant failed to sufficiently provide Transition Services, including assisting with AR, assisting with coordinating with customers, providing Plaintiff access to emails, and providing transition advisory services.

55. Further, Defendant failed to "provide reasonable assistance to [Plaintiff] in a manner reasonably intended to minimize disruptions to the operation of the Business" and "attempt to resolve in good faith any issues related to the Transition Services."

56. As a result of Defendant's breaches of the APA, Plaintiff has been damaged in an amount in excess of $1 million.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order finding in favor of Plaintiff on Count II and provide the following relief:

(a) Awarding Plaintiff money damages in the amount in excess of $1 million;

(b) Awarding Plaintiff pre-judgment and post-judgment interest;

(c) Awarding Plaintiff's attorneys' fees and costs; and

(d) Such other and further relief that the Court deems just and proper.

Respectfully submitted,

POLSINELLI PC

*/s/ Stephen J. Kraftschik*
Stephen J. Kraftschik (DSB No. 5623)
Andrew H. Meck (DSB No. 6874)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
Telephone: (302) 252-0923
Facsimile: (302) 252-0921
skraftschik@polsinelli.com
ameck@polsinelli.com

*Counsel for Plaintiff Hoist & Crane Service Group, Inc.*

Dated: January 9, 2026